UNSEALED
4/11/24

SEALED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | REDACTED |
| Plaintiff | |
| v. | Criminal Action No. 24- 41- UNA |
| HADJA FANTA KONE and SIAKA OUATTARA, | **[UNDER SEAL]** |
| Defendants. | |

## INDICTMENT

APR 1 1 2024

The Grand Jury for the District of Delaware charges that:

### *Background and Allegations Common to All Counts*

At all times during the indictment period:

The Defendants and Unindicted Co-Conspirators

1.  HADJA FANTA KONE, aka ADJIA KONE ("KONE"), who was born in Côte d'Ivoire, resided in the District of Delaware.

2.  SIAKA OUATTARA ("OUATTARA") was a national of Côte d'Ivoire who resided in Côte d'Ivoire.

3.  Unindicted Co-Conspirator 1 was a national of Côte d'Ivoire who resided in the District of Delaware.

4.  Unindicted Co-Conspirator 2, who was born in Côte d'Ivoire, resided in the District of Delaware.

5.  Unindicted Co-Conspirator 3, who was born in Côte d'Ivoire, resided in the District of Delaware.

6. Unindicted Co-Conspirator 4, who was born in Côte d'Ivoire, resided in the District of Delaware.

7. Unindicted Co-Conspirator 5, who was born in Côte d'Ivoire, resided in the District of Delaware.

<u>The Victims</u>

At the time of their respective victimizations:

8. Victim-1 resided in California.

9. Victim-2 resided in Illinois.

10. Victim-3 resided in Missouri.

11. Victim-4 resided in Texas.

12. From in or around May 2020 and continuing through in or around December 2022, in the District of Delaware and elsewhere, Defendant OUATTARA, Defendant KONE, Unindicted Co-Conspirators 1 through 5, and others known and unknown to the grand jury, operated an international, financially motivated "sextortion" and money laundering scheme that conspired to engage in, and did engage in, cyberstalking, interstate threats, and money laundering, while also engaging in wire fraud.

13. As used in this Indictment and described below, financially motivated "sextortion" refers to the practice of obtaining a victim's sexual photographs and/or videos, threatening to distribute the victim's sexual material to others, and demanding that the victim pay money to avoid the threatened distribution.

14. Defendant OUATTARA, operating from Côte d'Ivoire, among other roles, identified and sextorted victims utilizing a network of Delaware-based money mules, including KONE, to assist him, including with laundering the victims' illegally obtained funds.  OUATTARA also

2

coordinated the laundering of funds to members of the conspiracy who were located in Côte d'Ivoire and elsewhere overseas.

15. As used in this Indictment, "money mules" were co-conspirators who received victims' funds and then transferred the funds to others, including those who were located overseas, all in an attempt to conceal the nature, location, source, ownership, and control of the funds. Money mules used their own financial accounts, as well as financial accounts belonging to other money mules under their control, and financial accounts belonging to other unwitting victims whose accounts were exploited and co-opted by members of the conspiracy.

16. Defendant KONE, primarily operating from the District of Delaware, among other roles, was a money mule. She collected victims' funds into her own financial accounts, including accounts with peer-to-peer ("P2P") payment transfer services such as CashApp and Apple Pay, and into financial accounts in others' names which she controlled. KONE also provided other co-conspirators with access to her accounts, for use in the conspiracy. KONE further recruited other individuals to serve as money mules to receive and transfer funds at her direction. KONE also recruited other individuals to provide her with direct access to, and control of, their financial accounts.

17. Unindicted Co-Conspirators 1, 2, 3, 4, and 5, primarily operating from the District of Delaware, were also money mules for the conspiracy.

18. Ultimately, OUATTARA, KONE, Unindicted Co-Conspirators, and others known and unknown to the grand jury, cyberstalked, threatened, and attempted to sextort approximately $6 million from thousands of potential victims, using the conspiracy's CashApp and Apple Pay accounts alone, and successfully extorted approximately $1.7 million from those victims, including Victims 1 and 3, using their CashApp and Apple Pay accounts alone. Significant sums

3

of money were also transferred from victims, including Victim 2, to co-conspirators using other P2P payment transfer services, including Zelle, PayPal, Venmo.

## COUNT ONE

### Conspiracy to Cyberstalk and Send Interstate Threats

*Charging Paragraph*

19. From at least in or about May 2020, and continuing through at least in or about December 2022, in the District of Delaware and elsewhere, Defendants KONE and OUATTARA knowingly and unlawfully conspired, confederated, and agreed with each other, with Unindicted Co-Conspirators 1, 2, 3, 4 and 5 and with others known and unknown to the grand jury, to commit offenses against the United States, to wit:

   a. Cyberstalking, with the intent to harass and intimidate another person, to wit, Victims 1-4, by using the mail, interactive computer services and electronic communication services and an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to persons, including Victims 1-4, in violation of Title 18, United States Code, Section 2261A(2)(B);

   b. Interstate Threats, with intent to extort from persons, to wit, Victims 1-4, money and other things of value, to transmit in interstate and foreign commerce communications containing threats to injure the property and reputation of victims, including Victims 1-4; to wit, to commit sextortion against victims, in violation of Title 18, United States Code, Section 875(d).

4

<u>Manner and Means</u>

20. To further the objects of the conspiracy, KONE, OUATTARA, Unindicted Co-
conspirators 1-5 and others known and unknown to the grand jury used the following
manner and means, among others:

***The Fraudulent Financially Motivated Sextortion Scheme***

21. KONE, OUATTARA, Unindicted Co-conspirators 1-5 and others opened multiple
online accounts with various social media and communications providers, including
Instagram, Google, Snapchat, and WhatsApp; "P2P" payment transfer services like
CashApp, Zelle, PayPal, Venmo, and Apple Pay; and accounts with various financial
institutions. They often used other people's identities, both real and fictitious, in
opening or operating these accounts.

22. OUATTARA and others posed as young, attractive females online and initiated online
communications with thousands of potential victims, who were primarily young men
and included minors from the United States, Canada, and the United Kingdom.
OUATTARA and others offered to provide and/or provided victims with sexual
photographs, video recordings, and/or "web cam" or "live video chat" sessions of
what they falsely portrayed to be an attractive young female, when in fact they were
the ones operating the accounts.

23. OUATTARA and others fraudulently induced victims to provide them with the
victims' "reciprocal" sexual photos, videos, and/or web cam/live chat sessions.
Unbeknownst to the victims, during the web cam/live video chats, OUATTARA and
others surreptitiously recorded the victims as they exposed their genitals and/or
engaged in sexual activity (typically masturbation) (collectively "sexual images").

Shortly thereafter, OUATTARA and others sent the victims copies of the victims' fraudulently obtained sexual images.

24. OUATTARA and others then threatened to distribute the victims' sexual images, together with recordings of the victims' faces, to the victims' friends, family members, significant others, employers, and co-workers, and to publish the victims' sexual images widely online, unless the victims transferred funds to designated recipients, typically initially demanding approximately $100-$1,000, and in some cases ultimately demanding tens of thousands of dollars over time. In many instances, OUATTARA and others expressly threatened to ruin the victims' reputations, relationships with their friends and family, employment, and their entire lives.

25. OUATTARA and others falsely and fraudulently promised victims that if the victims transferred the funds as demanded, the victims' sexual images would be deleted. In fact, the victims' images were not deleted. In numerous instances, even after the victims confirmed they sent the demanded funds, OUATTARA and others continued to demand additional payments from the victims and to threaten to distribute the victims' sexual images.

26. In numerous instances, even after a victim informed OUATTARA and others that the victim was a minor, they continued to sextort the victim.

27. In numerous instances, if victims did not pay the demanded amounts, OUATTARA and others carried through with the threats and distributed the victims' sexual images to the victims' friends and family members.

***The Money Laundering Scheme***

28. OUATTARA, KONE, Unindicted Co-Conspirators 1-5 and others operated an infrastructure to transfer the funds illegally obtained from the victims, including Victims 1-3, to OUATTARA and others located in Côte d'Ivoire and elsewhere overseas, while concealing the nature, location, source, ownership, and control of the funds.

29. OUATTARA and others provided detailed payment instructions to victims. They directed victims, including Victims 1-4, to pay designated amounts of money to designated money mules, including to KONE and Unindicted Co-Conspirators 1-5 in the United States—primarily in the District of Delaware—via designated payment methods. Payment methods included the following: (1) P2P payment transfer services like CashApp, Zelle, PayPal, Venmo, and Apple Pay, all such transfers payable to accounts controlled by the money mules; (2) money transfer services like Western Union and MoneyGram, payable to the money mules; (3) U.S. Postal money orders, payable to the money mules and mailed to their residential addresses; and (4) stored value ("gift") cards that victims had loaded with funds.

30. OUATTARA, KONE, and others, including Unindicted Co-Conspirators 1-5, then used a variety of methods to collect and "cash out" the victims' funds, including by: (1) receiving funds into the money mules' P2P accounts they controlled, transferring funds to linked U.S. bank accounts, and withdrawing the funds as cash; (2) retrieving cash in-person at locations of money transfer services like Western Union; (3) receiving U.S. Postal money orders that victims mailed to them and cashing the money orders at designated locations; and (4) obtaining the identifiers of stored value

7

cards and purchasing and receiving shipment of goods, including luxury clothing, computers, and cell phones.

31. OUATTARA, KONE, and others, including Unindicted Co-Conspirators 1-3, used a variety of methods to transfer the victims' funds, after they had been converted to cash or goods, to OUATTARA and others who were located in Côte d'Ivoire and elsewhere overseas, including by (1) delivering cash in-person to a money transfer service location like Western Union, MoneyGram, Sendwave, or Orange, and transferring the funds to OUATTARA and others; (2) delivering cash in-person to a New York-based money transmitter ("Individual A"), who arranged for funds to be converted to local currency and paid out in Côte d'Ivoire to OUATTARA and others; and (3) re-shipping the purchased goods to OUATTARA and others, either directly or through Individual A.

32. After victims successfully transferred funds to the designated accounts, OUATTARA and others directed the victims to provide "proof of payment" (e.g., a photograph/screenshot that displayed the successful P2P transfer or the receipt for the U.S. Postal money order).  Typically using the electronic communications provider WhatsApp, OUATTARA in turn provided the victims' "proof of payment" screenshots to KONE and the other co-conspirators, and vice versa, so that they were notified of incoming victim funds and could withdraw the funds quickly, before the accounts were closed or suspended or the transfers were blocked or refunded.  In some instances, the victims' "proof of payment" screenshots contained the victims' sexual images, the phony female social media profile photographs used to sextort

8

them, and words and phrases the victims added in the text of the payment (for

example, in a memo line), such as "delete videos," "blackmail," and "release."

33. In some instances, in order to further disguise the true nature of the victims' transfers

of funds, OUATTARA and others directed victims to use false and misleading subject

or memo lines to accompany the transfer.

Overt Acts in Furtherance of the Conspiracy

34. To accomplish the objects of the conspiracy, OUATTARA, KONE and others

committed and caused to be committed the following overt acts, among others, in the

District of Delaware and elsewhere:

35. On or about October 20, 2020, OUATTARA, using Google Hangouts, sent a potential

victim a series of online communications in which he (1) posed as a female and

offered to show the victim "her" "pussy and tits" over a video call; (2) directed the

victim to show "her" his genitals and face and then surreptitiously recorded him

doing so; (3) sent the victim's sexual images to the victim, which included the

victim's face, along with social media account identifiers for several of the victim's

friends and family members; (4) threatened to distribute the victim's sexual images

and "ruin his life and employment" unless the victim transferred funds; (5) promised

to delete the victim's sexual images after receiving his funds; and (6) directed the

victim to transfer the funds to one or more designated financial accounts that were

controlled by KONE.

*Sextortion V-1*

36. Beginning in or about May 2020 and continuing through in or about December 2020,

one or more members of the conspiracy sent V-1 a series of online communications in

9

which they (1) posed as a female and offered to show the victim "her" "tits and ass" over a video call; (2) directed V-1 to show "her" his genitals and then surreptitiously recorded V-1 doing so; (3) sent V-1's sexual images to V-1, along with identifiers for several of V-1's family members; (4) threatened to distribute V-1's sexual images "all over the world" and ruin his life and career unless the victim transferred funds; (5) falsely and fraudulently promised to delete V-1's sexual images after receiving money from V-1, thereby falsely and fraudulently inducing V-1 to send money; and (6) directed V-1 to transfer a portion of the funds to one or more designated financial accounts that were controlled by KONE, Unindicted Co-Conspirator 1, Unindicted Co-Conspirator 2, and Unindicted Co-Conspirator 3.

37. On or about July 2, 2020-August 1, 2020, one or more members of the conspiracy caused V-1 to transfer funds to a financial account controlled by Unindicted Co-Conspirator 2.

38. On or about August 15, 2020, members of the conspiracy caused V-1 to attempt to transfer funds to a financial account controlled by Unindicted Co-Conspirator 3.

39. On or about August 15-August 17, 2020, members of the conspiracy caused V-1 to attempt to transfer funds to a financial account controlled by Unindicted Co-Conspirator 1.

40. On or about November 11, 2020, members of the conspiracy caused V-1 to transfer $200 via ApplePay to a financial account controlled by KONE.

41. On or about December 1, 2020, members of the conspiracy caused V-1 to attempt to transfer $250 via ApplePay to a financial account controlled by KONE; however, the transfer was not completed.

10

42. Over the course of approximately seven months, members of the conspiracy ultimately caused V-1 to make multiple sextortion payments, totaling approximately $4,500, using a variety of payment methods and designated recipients.

*Sextortion V-2*

43. Beginning in or about January 2021 and continuing through after December 2022, one or more members of the conspiracy sent V-2 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-2 to create and provide images of V-2's genitals by surreptitiously recording him on the video call; (3) sent V-2's sexual images to V-2; (4) threatened to distribute V-2's sexual images to friends and family and post them on YouTube unless V-2 transferred funds; (5) falsely and fraudulently promised to delete V-2's sexual images after receiving V-2's funds, thereby falsely and fraudulently inducing V-2 to send money; and (6) directed V-2 to transfer a portion of the funds to designated financial accounts that were controlled by KONE.

44. On or about January 16, 2022, OUATTARA and KONE caused V-2 to transfer approximately $1,060 to a financial account controlled by KONE, as explained in more detail in Paragraph 57 below.

45. On or about January 16, 2022, OUATTARA sent KONE via WhatsApp a "proof of payment" screenshot OUATTARA obtained from V-2 that also contained portions of another online communication with V-2 in which OUATTARA and other members of the conspiracy demanded "So I need it you pay all today" or "they will all see it." V-2 was directed to, and did, identify the payment as "Glovo," which is a Côte d'Ivoire food delivery service. The payment was labeled as "Done." The "proof of payment"

11

screenshot also stated, "registered as HADJA" and identified KONE's iCloud account name, which is also the identifier for KONE's Zelle and other accounts.

46. On or about January 16, 2022, OUATTARA sent KONE via WhatsApp a message in which he calculated their respective shares of the $1,060 payment from V-2, directed KONE to send his portion ($1,060-20%=$848) via Western Union, Sendwave, or Orange to his cell phone number, and directed her to use a first and last name that was in fact his mother's name.  As set forth below in Paragraph 57, the next day, KONE transferred V-2's funds from her account to OUATTARA as instructed.

47. Almost nine months later, on or about September 13, 2022, OUATTARA sent KONE via WhatsApp another "proof of payment" screenshot OUATTARA obtained from V-2 that also contained portions of another online communication between OUATTARA and other members of the conspiracy and V-2.   In the communication, OUATTARA and other members of the conspiracy accused the victim of not paying in January 2022, demanded additional proof of payment, and caused the victim to send a screenshot from his online bank account statement that showed his January 18, 2022, payment via Zelle of $1,060 to KONE.  On the same date, KONE sent OUATTARA via WhatsApp a screenshot showing the receipt of V-2's prior $1,060 payment.

48. Over the course of approximately two years, members of the conspiracy ultimately caused V-2 to make multiple sextortion payments, totaling at least $20,000, using a variety of payment methods and designated recipients.

*Sextortion V-3*

49. On or about July 8, 2022, and continuing for approximately one week, one or more members of the conspiracy sent V- 3 a series of online communications and phone

calls in which they (1) posed as an adult female and offered to engage in sexual
activity over a video call, (2) directed and caused V-3 to create and provide images of
V-3's genitals and face; (3) sent V-3's sexual images to V-3; (4) threatened to
distribute V-3's sexual images to friends, family, co-workers, his followers on social
media, and post the images on YouTube unless V-3 transferred funds; (5) falsely and
fraudulently promised to delete V-3's sexual images after receiving V-3's funds,
thereby falsely and fraudulently inducing V-3 to send money; and (6) directed V-3 to
transfer a portion of the funds to designated financial accounts that were controlled by
KONE.

50. Members of the conspiracy distributed V-3's sexual images to one or more of his
family members.

51. On or about July 8, 2022, OUATTARA and KONE caused V-3 to transfer three
separate payments, for approximately $50, $50, and $100 respectively, to a financial
account controlled by KONE.

52. On or about July 8, 2022, KONE sent OUATTARA via WhatsApp a CashApp "proof
of payment" screenshot showing three payments from V-3 in which V-3 identified the
payment as for "release." The three payments were identified as successful. A fourth
attempted payment from V-3 for $400 was labeled as "failed."

53. Over the course of approximately one week, members of the conspiracy ultimately
caused V-3 to make multiple sextortion payments, totaling several hundred dollars,
using a variety of payment methods and designated recipients.

*Sextortion of V-4*

54. On or about August 22, 2022, one or more members of the conspiracy sent V-4 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-4 to create and provide images of V-4's genitals by surreptitiously recording him on the video call; (3) sent V-4's sexual images to V-4; (4) threatened to distribute V-4's sexual images by posting them publicly online unless V-4 transferred funds; (5) falsely and fraudulently promised to delete V-4's sexual images after receiving V-4's funds, thereby falsely and fraudulently inducing V-4 to attempt to send money; and (6) directed V-4 to transfer the funds to designated financial accounts that were controlled by KONE.

55. On or about August 22, 2022, KONE sent OUATTARA via WhatsApp a CashApp "proof of payment" screenshot showing an attempted payment from V-4 in which V-4 identified the payment as for "please I don't want to die." The transaction was labeled as a "failed" payment.

56. On or about August 22, 2022, OUATTARA and KONE caused V-4 to attempt to transfer approximately $600 to a financial account controlled by KONE.

*International Money Transfers of Criminal Proceeds via MoneyGram*
*and New York Money Transmitter*

57. On or about January 17, 2022, the day after KONE received $1,060 from V-2, KONE transferred to OUATTARA proceeds of that criminal conduct by transferring approximately $848 USD (V-2's payment of $1,060 minus KONE's 20% share) via Orange to OUATTARA's designee in Côte d'Ivoire, which was identified using

OUATTARA's mother's first name and last name but with OUATTARA's cell phone number. In the notes of KONE's monetary transfer to OUATTARA, KONE identified the transfer as for "family support/living expenses." KONE then sent OUATTARA a screenshot of her "proof of transfer" on or about the same date and OUATTARA confirmed that he received the funds.

58. On or about July 24, 2022, after KONE received sextortion payments from various victims, including V-2, KONE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $8,210 in cash with Individual A, who operated a money transmitting business in New York. Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more financial accounts in Côte d'Ivoire. On or about the same date, July 24, 2022, KONE then sent OUATTARA a photograph of the paper receipt she received from Individual A as proof of transfer.

59. On or about July 28, 2022, shortly after KONE received sextortion payments from various victims, KONE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $11,212 in cash with Individual A, in New York.

60. Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more financial accounts in the Côte d'Ivoire. On or about the same date, July 28, 2022, KONE then sent OUATTARA a photograph of the paper receipt she received from Individual A as proof of transfer.

61. On or about November 16-18, 2022, OUATTARA sent KONE a series of messages in which he calculated their respective shares of the victim payments and directed KONE to send his portion ($2,073) via MoneyGram and directed her to use the name

B. Ouattara.  On or about November 18, 2022, KONE then sent OUATTARA a

photograph of the paper receipt she received from MoneyGram as proof of transfer.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

### Money Laundering Conspiracy

62. Paragraphs 1 through 18 and 21 through 33 as though fully set forth herein.

*Charging Paragraph*

63. From at least in or about May 2020, and continuing through at least in or about

December 2022, in the District of Delaware, and elsewhere, KONE and OUATTARA

did knowingly combine, conspire, and agree with each other, with Unindicted Co-

Conspirators 1-5 and with other persons known and unknown to the Grand Jury to

commit offenses against the United States in violation of Title 18, United States

Code, Section 1956, to wit:

a.  to knowingly conduct and attempt to conduct financial transactions affecting

interstate commerce and foreign commerce, which transactions involved the

proceeds of specified unlawful activity, that is, wire fraud in violation of 18

U.S.C. § 1343, knowing that the transactions were designed in whole or in part to

conceal or disguise the nature, the location, the source, the ownership, and the

control of the proceeds of specified unlawful activity, and that while conducting

and attempting to conduct such financial transactions, knew that the property

involved in the financial transactions represented the proceeds of some form of

unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i); and

16

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. Section 1343, from a place in the United States to or through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

*Manner and Means*

64. To further the objects of the conspiracy, KONE, OUATTARA, and their co-conspirators, known and unknown, carried out the manner and means described in paragraphs 21 through 33 of this Indictment.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS THREE THROUGH FIVE

### International Money Laundering

65. Paragraphs 1 through 18, 21 through 33, and 57 through 60 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

*Charging Paragraph*

66. On or about each of the dates listed below, in the District of Delaware, and elsewhere, KONE, OUATTARA, and others known and unknown to the Grand Jury, did transport, transmit, and transfer, and attempted to transport, transmit, and transfer,

17

monetary instruments and funds involving the proceeds of specified unlawful activity,

that is, wire fraud in violation of 18 U.S.C. § 1343, from a place in the United States,

specifically in the District of Delaware and elsewhere, to or through a place outside

the United States, that is, Côte d'Ivoire, knowing that the monetary instruments and

funds involved in the transportation, transmission, and transfer represented the

proceeds of some form of unlawful activity and knowing that such transportation,

transmission, and transfer was designed in whole or in part to conceal and disguise

the nature, location, source, ownership, and control of the proceeds of such specified

unlawful activity, each instance identified below being a separate violation of 18

U.S.C. §§ 1956(a)(1)(B)(i) and 2:

| Count | Approximate Date | Monetary Transaction |
|-------|------------------|----------------------|
| 3 | January 17, 2022 | International money transfer of $848 sent via Orange by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |
| 4 | July 24, 2022 | International money transfer of $8,210 sent via money transmitter by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |
| 5 | July 28, 2022 | International money transfer of $11,212 sent via money transmitter by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |

All in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2.

## COUNTS SIX THROUGH NINE

### Concealment Money Laundering

67. Paragraphs 1 through 18, 21 through 33, and 40, 44-45, 51, 55-56 of this Indictment

are re-alleged and incorporated herein by reference as though fully set forth herein.

18

*Charging Paragraph*

68. On or about each of the dates listed below, in the District of Delaware, and elsewhere, KONE, OUATTARA, and others known and unknown to the Grand Jury, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, conducted and attempted to conduct a financial transaction which in fact involved the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343, knowing that the transaction was designed in whole or in part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, each instance identified below being a separate violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2:

| Count | Approximate Date | Attempted or Actual Financial Transaction |
|-------|------------------|--------------------------------------------|
| 6 | November 11, 2020 | Receipt of funds from V-1 via ApplePay of $200 into a financial account controlled by Defendant KONE. |
| 7 | January 16, 2022 | Receipt of funds from V-2 via Zelle of $1,060 into a financial account controlled by Defendant KONE. |
| 8 | July 9, 2022 | Receipt of funds from V-3 via CashApp of approximately $50, $50, and $100 into a financial account controlled by Defendant KONE. |
| 9 | August 22, 2022 | Attempted receipt of funds from V-4 via CashApp of approximately $600 into a financial account controlled by Defendant KONE. |

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

19

## COUNTS TEN THROUGH TWELVE

### Wire Fraud

***Scheme and Artifice to Defraud***

69. Paragraphs 1 through 61 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

70. As part of the scheme, KONE, OUATTARA, and other conspirators made material misrepresentations to sextortion victims, including Victims 1-4, which misrepresentations included, but were not limited to, the following: that the victims were engaging in online sexual activities with an attractive, young female, when in fact they were interacting with OUATTARA and others and that if the victims paid the demanded funds, the victims' sexual images would be deleted, when in fact, the victims were instead required to pay additional funds.

71. On the dates listed below, and as part of the fraudulent scheme, OUATTARA and KONE exchanged electronic WhatsApp communications to facilitate sextortion victim payments.

***Charging Paragraph***

72. On or about the dates set forth below, in the District of Delaware and elsewhere, OUATTARA and KONE, defendants herein, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, as described in paragraphs 1-26, 36, 43, 49, 54 above, incorporated herein by reference, and for the purposes of executing such scheme, did knowingly transmit and cause to be transmitted by means of a wire communication in interstate commerce, the following:

| Count | Victim | Wire Type | Sent From | Sent To | Approximate Date of Transmission |
|-------|--------|-----------|-----------|---------|----------------------------------|
| 10 | V-2 | WhatsApp chat with "proof of payment" screenshot from V-2 | OUATTARA | KONE | January 16, 2022 |
| 11 | V-3 | WhatsApp chat with "proof of payment" screenshot from V-3 | KONE | OUATTARA | July 8, 2022 |
| 12 | V-4 | WhatsApp chat with "proof of payment" screenshot from V-4 | KONE | OUATTARA | August 22, 2022 |

All in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate sections 875(d) and 2261A of Title 18, in violation of Title 18, United States Code, Section 371, as set forth in Count One of the Indictment, the defendants, KONE and OUATTARA, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s).

If any of the aforementioned property, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third party;

        c.      has been placed beyond the jurisdiction of the court;

        d.      has been substantially diminished in value; or

     e.       has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

     Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the offenses set forth in Counts Two through Nine of the Indictment, in violation of Title 18, United States Code, Section 1956, the defendants, KONE and OUATTARA, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

     If any of the aforementioned property, as a result of any act or omission of the defendants:

     a.       cannot be located upon the exercise of due diligence;

     b.       has been transferred or sold to, or deposited with, a third party;

     c.       has been placed beyond the jurisdiction of the court;

     d.       has been substantially diminished in value; or

     e.       has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

     Lastly, upon conviction of the offenses set forth in Counts Ten through Twelve of the Indictment, in violation of Title 18, United States Code, Section 1343, the defendants, KONE

and OUATTARA, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

If any of the aforementioned property, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL:



Foreperson

23

DAVID C. WEISS
UNITED STATES ATTORNEY

By: _____
Briana Knox
Assistant United States Attorney
District of Delaware


_____
Mona Sedky
Senior Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section




Dated:  April 11, 2024




24