REDACTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | SEALED  UNSEALED 9/5/24 KJK |
| Plaintiff | : | |
| v. | : | Case No. 1:24-cr-00041-1-GBW |
| HADJA FANTA KONE | : | [UNDER SEAL] |
| SIAKA OUATTARA, | : | |
| SIDI AHMED DIAKITE, | : | |
| ALMAMY MOUSTAPHA DIABY, | : | |
| ABDUL AZIZ SANGARE, and | : | |
| ABDOUL AZIZ TRAORE, | : | |
| Defendants. | : | AUG 1 5 2024 |

### FIRST SUPERSEDING INDICTMENT

The Grand Jury for the District of Delaware charges that:

**Background and Allegations Common to All Counts**

At all times during the indictment period:

The Defendants

1. HADJA FANTA KONE, aka ADJIA KONE, ("KONE") who was born in Côte d'Ivoire, resided in the District of Delaware.

2. SIAKA OUATTARA ("OUATTARA") was a national of Côte d'Ivoire who resided in Côte d'Ivoire.

3. SIDI AHMED DIAKITE ("DIAKITE") was a national of Côte d'Ivoire who resided in the District of Delaware.

4. ALMAMY MOUSTAPHA DIABY ("DIABY"), who was born in Côte d'Ivoire, resided in the District of Delaware.

5.  ABDUL AZIZ SANGARE, aka ABDUL SANGARE ("SANGARE"), who was born in Côte d'Ivoire, resided in the District of Delaware.

6.  ABDOUL AZIZ TRAORE ("TRAORE"), who was born in Côte d'Ivoire, resided in the District of Delaware.

<u>The Victims</u>

At the time of their respective victimizations:

7.  Victim-1 resided in California.

8.  Victim-2 resided in Texas.

9.  Victim-3 resided in Texas.

10. Victim-4 resided in Ohio and was on vacation in Kentucky.

11. Victim-5 resided in Mississippi.

12. Victim-6 resided in California.

13. Victim-7 resided in Arizona.

14. Victim-8 resided in Florida.

15. Victim-9 resided in Illinois.

16. Victim-10 resided in Texas.

17. Victim-11 resided in Pennsylvania.

18. Victim-12 resided in Nebraska.

19. Victim-13 resided in Missouri.

20. Victim-14 resided in Missouri.

21. Victim-15 resided in Texas.

22. From in or around May 2020 and continuing through in or around December 2022, in the District of Delaware and elsewhere, Defendant OUATTARA, Defendant KONE, Defendant

DIAKITE, Defendant DIABY, Defendant SANGARE, Defendant TRAORE, and others known
and unknown to the grand jury, operated an international, financially motivated "sextortion" and
money laundering scheme that conspired to engage in, and did engage in, cyberstalking,
interstate threats with intent to extort, and money laundering, while also engaging in wire fraud.

23. As used in this Superseding Indictment and described below, financially motivated
"sextortion" refers to the practice of obtaining a victim's sexual photographs and/or videos,
threatening to distribute the victim's sexual material to others, and demanding that the victim pay
money to avoid the threatened distribution.

24. Defendant OUATTARA, operating from Côte d'Ivoire, among other roles, identified and
sextorted victims utilizing a network of Delaware-based money mules, including KONE,
DIAKITE, DIABY, SANGARE, and TRAORE, to assist him, including with laundering the
victims' illegally obtained funds.  OUATTARA also coordinated the laundering of funds to
members of the conspiracy who were located in Côte d'Ivoire and elsewhere overseas.

25. As used in this Indictment, "money mules" were co-conspirators who received victims'
funds and then transferred the funds to others, including those who were located overseas, all in
an attempt to conceal the nature, location, source, ownership, and control of the funds.  Money
mules used their own financial accounts, as well as financial accounts belonging to other money
mules under their control, and financial accounts belonging to other unwitting victims whose
accounts were exploited and co-opted by members of the conspiracy.

26. Defendants KONE, DIAKITE, DIABY, SANGARE, and TRAORE, primarily operating
from the District of Delaware, among other roles, were money mules.  They collected victims'
funds into their own financial accounts, including accounts with peer-to-peer ("P2P") payment
transfer services such as CashApp and Apple Pay, and into financial accounts in others' names

3

which they controlled.  In some instances, KONE, DIAKITE, DIABY, SANGARE, and TRAORE also provided other co-conspirators with access to their accounts, for use in the conspiracy.  KONE, DIAKITE, DIABY, SANGARE, and TRAORE further recruited other individuals to serve as money mules to receive and transfer funds at their direction.  In some instances, KONE, DIAKITE, DIABY, SANGARE, and TRAORE also recruited other individuals to provide them with direct access to, and control of, their financial accounts.

27. Ultimately, OUATTARA, KONE, DIAKITE, DIABY, SANGARE, TRAORE, and others known and unknown to the grand jury, engaged in a conspiracy that cyberstalked, threatened, and attempted to sextort approximately $6.9 million from thousands of potential victims, using the conspiracy's CashApp and Apple Pay accounts alone, and successfully extorted approximately $1.9 million from those victims, including Victims 1, 2, 3, 5, 6, 7, 11, 14, using their CashApp and Apple Pay accounts alone. Significant sums of money were also transferred from victims, including Victims 3, 4, 9, 11, 12, and 13, to co-conspirators using other P2P payment transfer services, including Zelle, PayPal, and Venmo.

## COUNT ONE

### Conspiracy to Cyberstalk and Send Interstate Threats

#### *Charging Paragraph*

28. From at least in or around May 2020, and continuing through at least in or around December 2022, in the District of Delaware and elsewhere, Defendants KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and TRAORE knowingly and unlawfully conspired, confederated, and agreed with each other, and with others known and unknown to the grand jury, to commit offenses against the United States, to wit:

a.  Cyberstalking, with the intent to harass and intimidate another person, to wit, Victims 1-15, by using the mail, interactive computer services and electronic communication services and an electronic communication system of interstate commerce, and other facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would be reasonably expected to cause substantial emotional distress to persons, including Victims 1-15, in violation of 18 U.S.C. § 2261A(2)(B); and

b.  Interstate Threats, with intent to extort from persons, to wit, Victims 1-15, money and other things of value, to transmit in interstate and foreign commerce communications containing threats to injure the property and reputation of victims, including Victims 1-15; to wit, to commit sextortion against victims, in violation of 18 U.S.C. § 875(d).

Manner and Means

29. To further the objects of the conspiracy, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE, and others known and unknown to the grand jury used the following manner and means, among others:

*The Fraudulent Financially Motivated Sextortion Scheme*

30. KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE, and others opened multiple online accounts with various social media and communications providers, including Instagram, Google, Snapchat, and WhatsApp; "P2P" payment transfer services like CashApp, Zelle, PayPal, Venmo, and Apple Pay; and accounts with various financial institutions.  They often used other people's identities, both real and fictitious, in opening or operating these accounts.

31. OUATTARA and others posed as young, attractive females online and initiated online communications with thousands of potential victims, who were primarily young men and

included minors from the United States, Canada, and the United Kingdom. OUATTARA and others offered to provide and/or provided victims with sexual photographs, video recordings, and/or "web cam" or "live video chat" sessions of what they falsely portrayed to be an attractive young female, when in fact they were the ones operating the accounts.

32. OUATTARA and others fraudulently induced victims to provide them with the victims' "reciprocal" sexual photos, videos, and/or web cam/live chat sessions. Unbeknownst to the victims, during the web cam/live video chats, OUATTARA and others surreptitiously recorded the victims as they exposed their genitals and/or engaged in sexual activity (typically masturbation) (collectively "sexual images"). Shortly thereafter, OUATTARA and others sent the victims copies of the victims' fraudulently obtained sexual images.

33. OUATTARA and others then threatened to distribute the victims' sexual images, together with recordings of the victims' faces, to the victims' friends, family members, significant others, employers, and co-workers, and to publish the victims' sexual images widely online, unless the victims transferred funds to designated recipients, typically initially demanding approximately $100-$1,000, and in some cases ultimately demanding tens of thousands of dollars over time. In many instances, OUATTARA and others expressly threatened to ruin the victims' reputations, relationships with their friends and family, employment, and their entire lives.

34. OUATTARA and others falsely and fraudulently promised victims that if the victims transferred the funds as demanded, the victims' sexual images would be deleted. In fact, the victims' images were not deleted. In numerous instances, even after the victims confirmed they sent the demanded funds, OUATTARA and others continued to demand additional payments from the victims and to threaten to distribute the victims' sexual images.

6

35. In numerous instances, even after a victim informed OUATTARA and others that the victim was a minor, they continued to sextort the victim.

36. In numerous instances, if victims did not pay the demanded amounts, OUATTARA and others carried through with the threats and distributed the victims' sexual images to the victims' friends and family members.

### *The Money Laundering Scheme*

37. KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE, and others operated an infrastructure to transfer the funds illegally obtained from the victims, including Victims 1-15, to OUATTARA and others located in Côte d'Ivoire and elsewhere overseas, while concealing the nature, location, source, ownership, and control of the funds.

38. OUATTARA and others provided detailed payment instructions to victims. They directed victims, including Victims 1-15, to pay designated amounts of money to designated money mules, including to KONE, DIAKITE, DIABY, SANGARE, and TRAORE, in the United States—primarily in the District of Delaware—via designated payment methods. Payment methods included the following: (1) P2P payment transfer services like CashApp, Zelle, PayPal, Venmo, and Apple Pay, all such transfers payable to accounts controlled by the money mules; (2) money transfer services like Western Union and MoneyGram, payable to the money mules; (3) U.S. Postal money orders, payable to the money mules and mailed to their residential addresses; and (4) stored value ("gift") cards that victims had loaded with funds.

39. KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE and others then used a variety of methods to collect and "cash out" the victims' funds, including by: (1) receiving funds into the money mules' P2P accounts they controlled, transferring funds to linked U.S. bank accounts, and withdrawing the funds as cash; (2) retrieving cash in-person at locations of money

7

transfer services like Western Union; (3) receiving U.S. Postal money orders that victims mailed to them and cashing the money orders at designated locations; and (4) obtaining the identifiers of stored value cards and purchasing and receiving shipment of goods, including luxury clothing, computers, and cell phones.

40. KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE and others used a variety of methods to transfer the victims' funds, after they had been converted to cash or goods, to OUATTARA and others who were located in Côte d'Ivoire and elsewhere overseas, including by (1) delivering cash in-person to a money transfer service location like Western Union, MoneyGram, Sendwave, or Orange, and transferring the funds to OUATTARA and others; (2) delivering cash in-person to a New York-based money transmitter ("Individual A"), who arranged for funds to be converted to local currency and paid out in Côte d'Ivoire to OUATTARA and others; and (3) re-shipping the purchased goods to OUATTARA and others, either directly or through Individual A.

41. After victims successfully transferred funds to the designated accounts, OUATTARA and others directed the victims to provide "proof of payment" (e.g., a photograph/screenshot that displayed the successful P2P transfer or the receipt for the U.S. Postal money order).  Typically using the electronic communications provider WhatsApp, OUATTARA and other co-conspirators in turn provided the victims' "proof of payment" screenshots to KONE, DIAKITE, DIABY, SANGARE, TRAORE, and the others, and vice versa, so that they were notified of incoming victim funds and could withdraw the funds quickly, before the accounts were closed or suspended or the transfers were blocked or refunded.  In some instances, the victims' "proof of payment" screenshots contained the victims' sexual images, the phony female social media

profile photographs used to sextort them, and words and phrases the victims added in the text of the payment (for example, in a memo line), such as "delete videos," "blackmail," and "release."

42. In some instances, in order to further disguise the true nature of the victims' transfers of funds, OUATTARA and others directed victims to use false and misleading subject or memo lines to accompany the transfer.

Overt Acts in Furtherance of the Conspiracy

43. To accomplish the objects of the conspiracy, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE and others committed and caused to be committed the following overt acts, among others, in the District of Delaware and elsewhere:

44. On or about October 20, 2020, OUATTARA, using Google Hangouts, sent a potential victim a series of online communications in which he (1) posed as a female and offered to show the victim "her" "pussy and tits" over a video call; (2) directed the victim to show "her" his genitals and face and then surreptitiously recorded him doing so; (3) sent the victim's sexual images to the victim, which included the victim's face, along with social media account identifiers for several of the victim's friends and family members; (4) threatened to distribute the victim's sexual images and "ruin his life and employment" unless the victim transferred funds; (5) promised to delete the victim's sexual images after receiving his funds; and (6) directed the victim to transfer the funds to one or more designated financial accounts that were controlled by KONE.

*Sextortion V-1*

45. Beginning in or around May 2020 and continuing through in or around December 2020, one or more members of the conspiracy sent V-1 a series of online communications in which they (1) posed as a female and offered to show the victim "her" "tits and ass" over a video call;

(2) directed V-1 to show "her" his genitals and then surreptitiously recorded V-1 doing so; (3) sent V-1's sexual images to V-1, along with identifiers for several of V-1's family members; (4) threatened to distribute V-1's sexual images "all over the world" and ruin his life and career unless the victim transferred funds; (5) falsely and fraudulently promised to delete V-1's sexual images after receiving money from V-1, thereby falsely and fraudulently inducing V-1 to send money; and (6) directed V-1 to transfer a portion of the funds to one or more designated financial accounts that were controlled by KONE, DIAKITE, DIABY, and SANGARE.

46. From on or about July 2, 2020 through on or about August 1, 2020, one or more members of the conspiracy caused V-1 to transfer funds to a financial account controlled by DIABY, including, on July 2, 2020, a transfer of $250 via CashApp to a financial account controlled by DIABY.

47. On or about August 15, 2020, members of the conspiracy caused V-1 to attempt to transfer $100 via CashApp to a financial account controlled by SANGARE.

48. On or about August 15-August 17, 2020, members of the conspiracy caused V-1 to attempt to transfer funds to a financial account controlled by DIAKITE, including, on August 15, 2020, an attempted transfer of $400 via CashApp to a financial account controlled by DIAKITE.

49. On or about November 11, 2020, members of the conspiracy caused V-1 to transfer $200 via Apple Pay to a financial account controlled by KONE.

50. On or about December 1, 2020, members of the conspiracy caused V-1 to attempt to transfer $250 via Apple Pay to a financial account controlled by KONE.

51. Over the course of approximately seven months, members of the conspiracy ultimately caused V-1 to make multiple sextortion payments, totaling approximately $4,500, using a variety of payment methods and designated recipients.

*Sextortion V-2*

52. Beginning on or about July 1, 2020, and continuing for a few days, one or more members of the conspiracy sent V-2 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-2 to create and provide images of V-2's genitals by surreptitiously recording him on the video call; (3) threatened to distribute V-2's sexual images to his family members and co-workers unless V-2 transferred funds; and (4) directed V-2 to transfer the funds to designated financial accounts that were controlled by DIABY.

53. On or about July 1, 2020, members of the conspiracy caused V-2 to make several attempts to transfer approximately $185 to a financial account controlled by DIABY.

54. On or about July 1, 2020, members of the conspiracy sent DIABY a "proof of payment" screenshot showing an attempted payment from V-2 for $185 via CashApp in which V-2 identified the payment as for "plz delete the video."  The transfer was labeled "failed."

55. On or about July 1, 2020, members of the conspiracy caused V-2 to transfer approximately $185 via CashApp, in three separate transfers, to a financial account controlled by DIABY.   V-2 identified one of the transfers as for "delete the vids plz."

*Sextortion V-3*

56. Beginning on or about July 8, 2020 and continuing until in or around March 2022, one or more members of the conspiracy sent V-3 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-3 to create and provide images of V-3's genitals by surreptitiously recording him on the video call; (3) sent V-3's sexual images to V-3, along with identifiers for several of V-3's friends and family members; (4) threatened to distribute V-3's sexual images to his friends,

11

family, and workplace; claimed that they had already posted the sexual video of V-3 on YouTube (in private mode); and threatened to distribute V-3's sexual images by posting them publicly online unless V-3 transferred funds; (5) falsely and fraudulently promised to delete V-3's sexual images after receiving V-3's funds, thereby falsely and fraudulently inducing V-3 to send money; and (6) directed V-3 to transfer the funds to designated financial accounts that were controlled by SANGARE, DIAKITE, DIABY, and KONE, among others.

57. On or about July 8, 2020, members of the conspiracy caused V-3 to transfer approximately $100 via PayPal to a financial account controlled by SANGARE.

58. On or about December 1, 2020, members of the conspiracy caused V-3 to attempt to transfer approximately $50 via CashApp to a financial account controlled by DIAKITE.

59. On or about October 15, 2021, members of the conspiracy caused V-3 to attempt to transfer approximately $50 via CashApp to a financial account controlled by DIABY.

60. On or about October 30, 2021, members of the conspiracy caused V-3 to attempt to transfer approximately $250 via Apple Pay to a financial account controlled by KONE.

61. Over the course of almost two years, members of the conspiracy ultimately caused V-3 to make multiple sextortion payments, totaling approximately $8,000, using a variety of payment methods and designated recipients.

*Sextortion V-4*

62. Beginning on or about July 19, 2020, and continuing for a week or two, one or more members of the conspiracy sent V-4 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-4 to create and provide images of V-4's genitals by surreptitiously recording him on the video call; (3) sent V-4's sexual images to V-4; (4) threatened to distribute V-4's sexual images to

12

everyone he knew unless V-4 transferred funds; and (5) directed V-4 to transfer the funds to designated financial accounts that were controlled by members of the conspiracy.

63. On or about July 19, 2020, members of the conspiracy caused V-4 to transfer approximately $150 via Venmo to a financial account controlled by members of the conspiracy.

64. On or about July 19, 2020, TRAORE obtained a "proof of payment" screenshot showing a payment from V-4 for $150 via Venmo in which V-4 identified the payment as "Vid."

*Sextortion V-5*

65. Beginning on or about July 21, 2020, and continuing for several days, one or more members of the conspiracy sent V-5 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-5 to create and provide images of V-5's genitals by surreptitiously recording him on the video call; (3) sent V-5's sexual images to V-5; (4) threatened to post V-5's sexual images on YouTube and distribute it to his friends, family, and workplace unless V-5 transferred funds; (5) falsely and fraudulently promised to delete V-5's sexual images after receiving V-5's funds, thereby falsely and fraudulently inducing V-5 to send money; and (6) directed V-5 to transfer the funds to designated financial accounts that were controlled by DIAKITE and DIABY, among others.

66. On or about July 21, 2020, members of the conspiracy caused V-5 to attempt to transfer approximately $300 via CashApp to a financial account controlled by DIAKITE.

67. On or about July 21, 2020, DIAKITE received two e-mail messages from CashApp containing two notifications of incoming payments (or attempted payments) from V-5. The first e-mail contained the subject line: "[first name and last name of V-5] sent you $300 for please delete the video." The first e-mail had, as an attachment, a screenshot showing a CashApp

13

payment for $300 with V-5's name, $300, and the text: "please delete the video." The second e-mail, sent a few seconds later, contained a subject line: "Payment failed." The second contained the same screenshot, with added text that the payment failed.

68. On or about July 21, 2020, members of the conspiracy caused V-5 to attempt to transfer approximately $50 via CashApp to a financial account controlled by DIABY.

69. Members of the conspiracy ultimately caused V-5 to make multiple sextortion payments, totaling approximately $300, using a variety of payment methods and designated recipients.

*Sextortion V-6*

70. Beginning on or about August 1, 2020, and continuing for approximately one month, one or more members of the conspiracy sent V-6 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-6 to create and provide images of V-6's genitals by surreptitiously recording him on the video call; (3) sent V-6's compromising images to V-6; (4) threatened to distribute V-6's compromising images to his friends, family, and workplace unless V-6 transferred funds; (5) falsely and fraudulently promised to delete V-6's images after receiving V-6's funds, thereby falsely and fraudulently inducing V-6 to send money; and (6) directed V-6 to transfer the funds to designated financial accounts that were controlled by DIABY and DIAKITE, among others.

71. On or about August 5, 2020, members of the conspiracy caused V-6 to transfer $100 via CashApp to a financial account controlled by DIABY.

72. On or about August 6, 2020, members of the conspiracy caused V-6 to transfer $300 via CashApp to a financial account controlled by DIABY.

73. On or about August 8, 2020, members of the conspiracy caused V-6 to transfer $50 via CashApp to a financial account controlled by DIABY.

14

74. On or about August 8, 2020, members of the conspiracy caused V-6 to attempt to transfer $300 via CashApp to a financial account controlled by DIAKITE.

75. On or about August 8, 2020, DIAKITE received an e-mail message from CashApp containing a notification of an incoming attempted payment from V-6. The subject line was "Payment failed." The e-mail had, as an attachment, a screenshot showing a CashApp payment for $300 with V-6's name, $300, and the text: "here you go a\*\*hole."

76. Members of the conspiracy ultimately caused V-6 to make multiple sextortion payments, totaling approximately $1,000, using a variety of payment methods and designated recipients.

*Sextortion V-7*

77. Beginning on or about December 5, 2020, and continuing for several days, one or more members of the conspiracy sent V-7 a series of online communications in which they (1) posed as an adult female and offered to send one or more sexual photographs of herself; (2) directed and caused V-7 to create and provide images of V-7's genitals; (3) sent V-7's sexual images to V-7; (4) threatened to distribute V-7's sexual images to his family and everyone on his social media unless V-7 transferred funds; (5) falsely and fraudulently promised to delete V-7's sexual images after receiving V-7's funds, thereby falsely and fraudulently inducing V-7 to send money; and (6) directed V-7 to transfer the funds to designated financial accounts that were controlled by DIAKITE.

78. On or about December 5, 2020, members of the conspiracy caused V-7 to transfer approximately $100 via CashApp (two payments of $50) to a financial account controlled by DIAKITE.

79. On or about December 5, 2020, DIAKITE received three separate e-mail messages from CashApp, each containing a notification of an incoming payment from V-7. The subject lines

15

read, respectively, "[V-7] sent you $50 for blackmailing," "[V-7] sent you $50 for blackmailing," and "You accepted $50 from [V-7] for blackmailing." Each of the three e-mails had, as an attachment, a screenshot showing a CashApp payment for $50 with V-7's name, $50, and the text: "blackmailing."

*Sextortion V-8*

80. Beginning on or about December 26, 2020, and continuing for several days, one or more members of the conspiracy sent V-8 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-8 to create and provide sexual images of V-8; (3) threatened to distribute V-8's sexual images to others unless V-8 transferred funds; and (4) directed V-8 to transfer the funds to designated financial accounts that were controlled by SANGARE and KONE.

81. On or about December 26, 2020, members of the conspiracy caused V-8 to attempt to transfer approximately $50 via CashApp to a financial account controlled by SANGARE.

82. On or about December 26, 2020, DIABY sent SANGARE, via WhatsApp, a CashApp "proof of payment" screenshot showing an attempted $50 payment from V-8 in which V-8 identified the payment as for "blackmail."

83. On or about December 26, 2020, members of the conspiracy caused V-8 to attempt to transfer approximately $50 to a financial account controlled by KONE. V-8 identified the payment as for "blackmail."

*Sextortion V-9*

84. Beginning in or around January 2021 and continuing through after December 2022, one or more members of the conspiracy sent V-9 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed

and caused V-9 to create and provide images of V-9's genitals by surreptitiously recording him on the video call; (3) sent V-9's sexual images to V-9; (4) threatened to distribute V-9's sexual images to friends and family and post them on YouTube unless V-9 transferred funds; (5) falsely and fraudulently promised to delete V-9's sexual images after receiving V-9's funds, thereby falsely and fraudulently inducing V-9 to send money; and (6) directed V-9 to transfer a portion of the funds to designated financial accounts that were controlled by KONE.

85. On or about January 16, 2022, OUATTARA and KONE caused V-9 to transfer approximately $1,060 to a financial account controlled by KONE, as explained in more detail in Paragraph 121 below.

86. On or about January 16, 2022, OUATTARA sent KONE via WhatsApp a "proof of payment" screenshot OUATTARA obtained from V-9 that also contained portions of another online communication with V-9 in which OUATTARA and other members of the conspiracy demanded "So I need it you pay all today" or "they will all see it." V-9 was directed to, and did, identify the payment as "Glovo," which is a Côte d'Ivoire food delivery service. The payment was labeled as "Done." The "proof of payment" screenshot also stated, "registered as HADJA" and identified KONE's iCloud account name, which is also the identifier for KONE's Zelle and other accounts.

87. On or about January 16, 2022, OUATTARA sent KONE, via WhatsApp, a message in which he calculated their respective shares of the $1,060 payment from V-9, directed KONE to send his portion ($1,060-20%=$848) via Western Union, Sendwave, or Orange to his cell phone number, and directed her to use a first and last name that was in fact his mother's name. As set forth below in Paragraph 121, the next day, KONE transferred V-9's funds from her account to OUATTARA as instructed.

88. Almost nine months later, on or about September 13, 2022, OUATTARA sent KONE, via WhatsApp, another "proof of payment" screenshot OUATTARA obtained from V-9 that also contained portions of another online communication between OUATTARA and other members of the conspiracy and V-9. In the communication, OUATTARA and other members of the conspiracy accused the victim of not paying in January 2022, demanded additional proof of payment, and caused the victim to send a screenshot from his online bank account statement that showed his January 18, 2022, payment via Zelle of $1,060 to KONE. On the same date, KONE sent OUATTARA via WhatsApp a screenshot showing the receipt of V-9's prior $1,060 payment.

89. Over the course of approximately two years, members of the conspiracy ultimately caused V-9 to make multiple sextortion payments, totaling at least $20,000, using a variety of payment methods and designated recipients.

*Sextortion V-10*

90. Beginning in or around January 2021, and continuing for over two years, one or more members of the conspiracy sent V-10 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-10 to create and provide images of V-10's genitals by surreptitiously recording him on the video call; (3) sent V-10's sexual images and identifiers for his contacts on social media to V-10; (4) threatened to distribute V-10's sexual images to his employer, family members, and all of his contacts on social media list unless V-10 transferred funds; (5) falsely and fraudulently promised to delete V-10's sexual images after receiving V-10's funds, thereby falsely and fraudulently inducing V-10 to send money; and (6) directed V-10 to transfer the funds to designated financial accounts that were controlled by SANGARE, among others.

18

91. On or about January 28, 2021, members of the conspiracy caused V-10 to attempt to transfer approximately $150 via CashApp to a financial account controlled by SANGARE.

92. On or about January 28, 2021, DIABY exchanged with SANGARE via WhatsApp a CashApp "proof of payment" screenshot showing an attempted $150 payment from V-10 in which V-10 identified the payment as for "video."

93. Over the course of over two years, members of the conspiracy ultimately caused V-10 to make multiple sextortion payments, totaling at least $12,000, using a variety of payment methods and designated recipients.

*Sextortion V-11*

94. Beginning on or about February 11, 2021, and continuing until in or around July 2022, one or more members of the conspiracy sent V-11 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-11 to create and provide images of V-11's genitals by surreptitiously recording him on the video call; (3) sent V-11's sexual images and identifiers for his social media contacts to V-11; (4) threatened to post V-11's sexual images on YouTube and distribute V-11's sexual images to his friends and family unless V-11 transferred funds; (5) falsely and fraudulently promised to delete V-11's sexual images after receiving V-11's funds, thereby falsely and fraudulently inducing V-11 to send money; and (6) directed V-11 to transfer the funds to designated financial accounts that were controlled by DIABY, DIAKITE, and KONE, among others.

95. On February 26, 2021, members of the conspiracy caused V-11 to transfer approximately $850 via Apple Pay to a financial account controlled by DIAKITE.

96. On or about October 19, 2021, members of the conspiracy caused V-11 to transfer approximately $300 via Apple Pay to a financial account controlled by DIABY.

97. On or about October 29-30, 2021, members of the conspiracy caused V-11 to transfer approximately $750 via Apple Pay to a financial account controlled by KONE.

98. On or about January 19, 2022, members of the conspiracy caused V-11 to attempt to transfer approximately $400 via Apple Pay to a financial account controlled by KONE.

99. On or about January 19, 2022, KONE and OUATTARA exchanged a WhatsApp message with a proof of payment screenshot showing that V-11 attempted to transfer $400. The transfer was labeled: "Status: Rejected."

100.    On or about January 20, 2022, members of the conspiracy caused V-11 to attempt to transfer approximately $500 via Apple Pay to a financial account controlled by KONE.

101.    Over the course of approximately 18 months, members of the conspiracy ultimately caused V-11 to make multiple sextortion payments, totaling approximately $15,000, using a variety of payment methods and designated recipients.

*Sextortion V-12*

102.    Beginning on or about May 3, 2021, and continuing for about one week, one or more members of the conspiracy sent V-12 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-12 to create and provide images of V-12's genitals by surreptitiously recording him on the video call; (3) sent V-12's sexual images to V-12; (4) threatened to distribute V-12's sexual images to his friends and family unless V-12 transferred funds; and (5) directed V-12 to transfer the funds to designated financial accounts that were controlled by TRAORE, among others.

103.    On or about May 3, 2021, members of the conspiracy caused V-12 to transfer approximately $300 via PayPal to a financial account controlled by TRAORE.

104.    On or about May 3, 2021, a member of the conspiracy sent a series of WhatsApp messages to TRAORE with one or more "proof of payment" screenshots showing a payment from V-12 for $300 via PayPal.

105.    On or about May 9-10, 2021, TRAORE sent a member of the conspiracy a series of WhatsApp messages directing how and when to transfer the funds and split the proceeds.

106.    Over the course of approximately one week, members of the conspiracy ultimately caused V-12 to make multiple sextortion payments, totaling approximately $700, using a variety of payment methods and designated recipients.

*Sextortion V-13*

107.    Beginning in or around May 2021, and continuing for approximately a month, one or more members of the conspiracy sent V-13 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call, (2) directed and caused V-13 to create and provide images of V-13's genitals, including by surreptitiously recording him on the video call; (3) sent V-13's sexual images to V-13; (4) threatened to distribute V-13's sexual images unless V-13 transferred funds; (5) falsely and fraudulently promised to delete V-13's sexual images after receiving V-13's funds, thereby falsely and fraudulently inducing V-13 to send money; and (6) directed V-13 to transfer the funds to designated financial accounts that were controlled by TRAORE, among others.

108.    On or about May 25, 2021, members of the conspiracy caused V-13 to transfer approximately $1,000 via PayPal to a financial account controlled by TRAORE.

21

109.    On or about May 26-27, 2021, TRAORE sent another member of the conspiracy a series of WhatsApp messages with a "proof of payment" screenshot showing a payment from V-13 for $1,000 via PayPal, and TRAORE directed the other member of the conspiracy to receive the victim's funds and then transfer $890 of the $1,000 to TRAORE.

110.    Over the course of approximately one month, members of the conspiracy ultimately caused V-13 to make multiple sextortion payments, totaling approximately $3,500, using a variety of payment methods and designated recipients.

*Sextortion V-14*

111.    On or about July 8, 2022, and continuing for approximately one week, one or more members of the conspiracy sent V-14 a series of online communications and phone calls in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-14 to create and provide images of V-14 's genitals and face; (3) sent V-14's sexual images to V-14; (4) threatened to distribute V-14 's sexual images to his friends, family, co-workers, his followers on social media, and post the images on YouTube unless V-14 transferred funds; (5) falsely and fraudulently promised to delete V-14's sexual images after receiving V-14's funds, thereby falsely and fraudulently inducing V-14 to send money; and (6) directed V-14 to transfer a portion of the funds to designated financial accounts that were controlled by KONE.

112.    Members of the conspiracy distributed V-14's sexual images to one or more of his family members.

113.    On or about July 8, 2022, OUATTARA and KONE caused V-14 to transfer three separate payments, for approximately $50, $50, and $100, via CashApp, to a financial account controlled by KONE.

22

114.    On or about July 8-9, 2022, KONE sent OUATTARA, via WhatsApp, a CashApp "proof of payment" screenshot showing three payments from V-14 in which V-14 identified the payment as for "release." The three payments were identified as successful. A fourth attempted payment from V-14 for $400 was labeled as "failed."

115.    Over the course of approximately one week, members of the conspiracy ultimately caused V-14 to make multiple sextortion payments, totaling several hundred dollars, using a variety of payment methods and designated recipients.

*Sextortion V-15*

116.    On or about August 22, 2022, one or more members of the conspiracy sent V-15 a series of online communications in which they (1) posed as an adult female and offered to engage in sexual activity over a video call; (2) directed and caused V-15 to create and provide images of V-15's genitals by surreptitiously recording him on the video call; (3) sent V-15's sexual images to V-15; (4) threatened to distribute V-15's sexual images by posting them publicly online unless V-15 transferred funds; (5) falsely and fraudulently promised to delete V-15 's sexual images after receiving V-15's funds, thereby falsely and fraudulently inducing V-15 to attempt to send money; and (6) directed V-15 to transfer the funds to designated financial accounts that were controlled by KONE.

117.    On or about August 22, 2022, KONE sent OUATTARA via WhatsApp a CashApp "proof of payment" screenshot showing an attempted payment from V-15 in which V-15 labelled the payment: "please I don't want to die." The transaction was labeled as a "failed" payment.

118.    On or about August 22, 2022, OUATTARA and KONE caused V-15 to attempt to transfer approximately $600 via CashApp to a financial account controlled by KONE.

*International Money Transfers of Criminal Proceeds*

119.    On or about September 15, 2020, shortly after TRAORE received sextortion payments from various victims, TRAORE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $24,000 in cash with Individual A in New York. Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more financial accounts in the Côte d'Ivoire.

120.    On or about January 19, 2021, shortly after DIAKITE received sextortion payments from various victims, DIAKITE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $19,400 in cash with Individual A in New York.  Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more financial accounts in the Côte d'Ivoire.

121.    On or about January 17, 2022, the day after KONE received $1,060 from V-9, KONE transferred to OUATTARA proceeds of that criminal conduct by transferring approximately $848 (V-9's payment of $1,060 minus KONE's 20% share) via Orange to OUATTARA's designee in Côte d'Ivoire, which was identified using OUATTARA's mother's first name and last name but with OUATTARA's cell phone number.  In the notes of KONE's monetary transfer to OUATTARA, KONE identified the transfer as for "family support/living expenses."  KONE then sent OUATTARA a screenshot of her "proof of transfer" on or about the same date and OUATTARA confirmed that he received the funds

122.    On or about July 24, 2022, after KONE received sextortion payments from various victims, including V-9, KONE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $8,210 in cash with Individual A in New York.  Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more

24

financial accounts in Côte d'Ivoire. On or about the same date, July 24, 2022, KONE then sent OUATTARA a photograph of the paper receipt she received from Individual A as proof of transfer.

123.    On or about July 28, 2022, shortly after KONE received sextortion payments from various victims, KONE transferred to OUATTARA proceeds of that criminal conduct by depositing approximately $11,212 in cash with Individual A in New York. Individual A then made these funds available for OUATTARA to withdraw in the local currency from one or more financial accounts in the Côte d'Ivoire. On or about the same date, July 28, 2022, KONE then sent OUATTARA a photograph of the paper receipt she received from Individual A as proof of transfer.

124.    On or about November 16-18, 2022, OUATTARA sent KONE a series of messages in which he calculated their respective shares of the victim payments and directed KONE to send his portion ($2,073) via MoneyGram and directed her to use the name B. Ouattara. On or about November 18, 2022, KONE then sent OUATTARA a photograph of the paper receipt she received from MoneyGram as proof of transfer.

All in violation of 18 U.S.C. § 371.

## COUNT TWO

### Money Laundering Conspiracy

125.    Paragraphs 1-27 and 30-42 are re-alleged and incorporated herein by reference as though fully set forth herein.

### *Charging Paragraph*

126.    From at least in or around May 2020, and continuing through at least in or around December 2022, in the District of Delaware, and elsewhere, KONE, OUATTARA, DIAKITE,

25

DIABY, SANGARE, and TRAORE did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of 18 U.S.C. § 1956, to wit:

a.  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and interstate threats with intent to extort in violation of 18 U.S.C. § 875(d), knowing that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); and

b.  to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and interstate threats with intent to extort in violation of 18 U.S.C. § 875(d), from a place in the United States to or through a place outside the United States, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i).

26

*Manner and Means*

127.    To further the objects of the conspiracy, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, TRAORE, and their co-conspirators, known and unknown, carried out the manner and means described in paragraphs 30 through 42 of this Indictment.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS THREE THROUGH SEVEN

### International Money Laundering

128.    Paragraphs 1-27, 30-42, and 119-123 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

*Charging Paragraph*

129.    On or about each of the dates listed below, in the District of Delaware, and elsewhere, KONE, OUATTARA, DIAKITE, and TRAORE, as indicated for each count below, and others known and unknown to the Grand Jury, did transport, transmit, and transfer, and attempted to transport, transmit, and transfer, monetary instruments and funds involving the proceeds of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and interstate threats with intent to extort in violation of 18 U.S.C. § 875(d), from a place in the United States, specifically in the District of Delaware and elsewhere, to or through a place outside the United States, that is, Côte d'Ivoire, knowing that the monetary instruments and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, each instance identified below being a separate violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2:

27

| Count | As to Defendant(s) | Approximate Date | Monetary Transaction |
|-------|-------------------|------------------|---------------------|
| 3 | OUATTARA and TRAORE | September 15, 2020 | International money transfer of $24,000 sent via money transmitter by Defendant TRAORE to Defendant OUATTARA located in Côte d'Ivoire. |
| 4 | OUATTARA and DIAKITE | January 19, 2021 | International money transfer of $19,400 sent via money transmitter by Defendant DIAKITE to Defendant OUATTARA located in Côte d'Ivoire. |
| 5 | OUATTARA and KONE | January 17, 2022 | International money transfer of $848 sent via Orange by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |
| 6 | OUATTARA and KONE | July 24, 2022 | International money transfer of $8,210 sent via money transmitter by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |
| 7 | OUATTARA and KONE | July 28, 2022 | International money transfer of $11,212 sent via money transmitter by Defendant KONE to Defendant OUATTARA located in Côte d'Ivoire. |

All in violation of 18 U.S.C. §§ 1956(a)(2)(B)(i) and 2.

<u>**COUNTS EIGHT THROUGH TWENTY-THREE**</u>

**Concealment Money Laundering**

130.    Paragraphs 1-27 and 30-42 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

***Charging Paragraph***

131.    On or about each of the dates listed below, in the District of Delaware, and elsewhere, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and TRAORE, as indicated for each count below, and others known and unknown to the Grand Jury, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity,

28

conducted and attempted to conduct a financial transaction which in fact involved the proceeds

of specified unlawful activity, that is, wire fraud in violation of 18 U.S.C. § 1343 and interstate

threats with intent to extort in violation of 18 U.S.C. § 875(d), knowing that the transaction was

designed in whole or in part, to conceal or disguise the nature, the location, the source, the

ownership, or the control of the proceeds of specified unlawful activity, each instance identified

below being a separate violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2:

| Count | As to Defendant(s) | Victim | Approximate Date | Attempted or Successful Financial Transaction |
|-------|-------------------|--------|------------------|-----------------------------------------------|
| 8 | DIABY | V-2 | July 1, 2020 | Receipt of funds from V-2 via CashApp of $185 into a financial account controlled by Defendant DIABY |
| 9 | SANGARE | V-3 | July 8, 2020 | Receipt of funds from V-3 via PayPal of $100 into a financial account controlled by Defendant SANGARE |
| 10 | DIAKITE | V-5 | July 21, 2020 | Attempted receipt of funds from V-5 via CashApp of approximately $300 into a financial account controlled by Defendant DIAKITE. |
| 11 | DIABY | V-6 | August 6, 2020 | Receipt of funds from V-6 via CashApp of approximately $300 into a financial account controlled by Defendant DIABY. |
| 12 | DIAKITE | V-6 | August 8, 2020 | Attempted receipt of funds from V-6 via CashApp of approximately $300 into a financial account controlled by Defendant DIAKITE. |
| 13 | SANGARE | V-1 | August 15, 2020 | Attempted receipt of funds from V-1 via CashApp of $100 into a financial account controlled by Defendant SANGARE |

| Count | As to Defendant(s) | Victim | Approximate Date | Attempted or Successful Financial Transaction |
|---|---|---|---|---|
| 14 | KONE OUATTARA | V-1 | November 11, 2020 | Receipt of funds from V-1 via Apple Pay of $200 into a financial account controlled by Defendant KONE. |
| 15 | DIAKITE | V-7 | December 5, 2020 | Receipt of funds from V-7 via CashApp of approximately $100, in two payments of $50, into a financial account controlled by Defendant DIAKITE. |
| 16 | SANGARE | V-8 | December 26, 2020 | Attempted receipt of funds from V-8 via CashApp of approximately $50 into a financial account controlled by Defendant SANGARE. |
| 17 | SANGARE | V-10 | January 28, 2021 | Attempted receipt of funds from V-10 via CashApp of approximately $150 into a financial account controlled by Defendant SANGARE. |
| 18 | TRAORE | V-12 | May 3, 2021 | Receipt of funds from V-12 via PayPal of $300 into a financial account controlled by Defendant TRAORE |
| 19 | TRAORE | V-13 | May 25, 2021 | Receipt of funds from V-13 via CashApp of approximately $1,000 into a financial account controlled by Defendant TRAORE. |
| 20 | DIABY | V-11 | October 19, 2021 | Receipt of funds from V-11 via CashApp of approximately $300 into a financial account controlled by Defendant DIABY. |
| 21 | KONE OUATTARA | V-9 | January 16, 2022 | Receipt of funds from V-9 via Zelle of $1,060 into a financial account controlled by Defendant KONE. |
| 22 | KONE OUATTARA | V-14 | July 8, 2022 | Receipt of funds from V-14 via CashApp of approximately $50, $50, and $100 into a financial account controlled by Defendant KONE. |

| Count | As to Defendant(s) | Victim | Approximate Date | Attempted or Successful Financial Transaction |
|---|---|---|---|---|
| 23 | KONE OUATTARA | V-15 | August 22, 2022 | Attempted receipt of funds from V-15 via CashApp of approximately $600 into a financial account controlled by Defendant KONE. |

All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.

## COUNTS TWENTY-FOUR THROUGH THIRTY-THREE

### Wire Fraud

#### Scheme and Artifice to Defraud

132.    Paragraphs 1-124 of this Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

133.    As part of the scheme, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and TRAORE and other co-conspirators made material misrepresentations to sextortion victims, including Victims 1-15, which misrepresentations included, but were not limited to, the following:

a.  that the victims were engaging in online sexual activities with an attractive, young females, when in fact they were interacting with OUATTARA and others from Cote d'Ivoire;

b.  that the victims were participating in an unrecorded "live video call" when in fact they were being surreptitiously recorded by OUATTARA and others from Cote d'Ivoire;

c.  that the purported females could only communicate on the video call by written text message rather than by using their voice because they had a "broken microphone," when in fact they did so to hide their (male) voices and true (male) identities;

d.  that if the victims paid the demanded funds, the victims' sexual images would be deleted, when in fact, the victims were instead required to pay additional funds.

31

134.   On the dates listed below, and as part of the fraudulent scheme, KONE, OUATTARA,

DIAKITE, DIABY, SANGARE, and TRAORE sent or received electronic transfers or messages

to facilitate sextortion victim payments.

***Charging Paragraph***

135.   On or about the dates set forth below, in the District of Delaware and elsewhere,

KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and TRAORE, as indicated for each

count below, defendants herein, having devised and intending to devise a scheme and artifice to

defraud and to obtain money and property by means of materially false and fraudulent pretenses,

representations and promises, as described in paragraphs 1-124 above, incorporated herein by

reference, and for the purposes of executing such scheme, did knowingly transmit and cause to

be transmitted by means of a wire communication in interstate commerce, the following:

| Count | As to Defendant | Victim | Wire Type | Sent From | Sent To | Approximate Date of Transmission |
|---|---|---|---|---|---|---|
| 24 | SANGARE | V-3 | PayPal payment | V-3 | SANGARE | July 8, 2020 |
| 25 | DIAKITE | V-5 | E-mail with proof of payment from V-5 | CashApp/Square.com | DIAKITE | July 21, 2020 |
| 26 | DIAKITE | V-7 | E-mail with proof of payment from V-7 | CashApp/Square.com | DIAKITE | December 5, 2020 |
| 27 | DIABY | V-8 | WhatsApp chat with "proof of payment" screenshot from V-8 | DIABY | SANGARE | December 26, 2020 |
| 28 | DIABY | V-10 | WhatsApp chat with "proof of | DIABY | SANGARE | January 28, 2021 |

| | | | payment" screenshot from V-10 | | | |
|---|---|---|---|---|---|---|
| 29 | TRAORE | V-12 | WhatsApp chat re "proof of payment" screenshot from V-12 | TRAORE | Co-Conspirator | May 3, 2021 |
| 30 | TRAORE | V-13 | WhatsApp chat re "proof of payment" screenshot from V-13 | TRAORE | Co-Conspirator | May 25, 2021 |
| 31 | OUATTARA | V-9 | WhatsApp chat with "proof of payment" screenshot from V-9 | OUATTARA | KONE | January 16, 2022 |
| 32 | KONE | V-14 | WhatsApp chat with "proof of payment" screenshot from V-14 | KONE | OUATTARA | July 8, 2022 |
| 33 | KONE | V-15 | WhatsApp chat with "proof of payment" screenshot from V-15 | KONE | OUATTARA | August 22, 2022 |

All in violation of 18 U.S.C. §§ 1343 and 2.

## NOTICE OF FORFEITURE

Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of a conspiracy to violate Sections 875(d) and 2261A of Title 18, in violation of Title 18, United States Code, Section 371, as set forth in Count One of the Indictment, the defendants, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and

TRAORE, shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation.

If any of the aforementioned property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of the offenses set forth in Counts Two through Twenty-Three of the Indictment, in violation of Title 18, United States Code, Section 1956, the defendants, KONE and OUATTARA, shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

If any of the aforementioned property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

34

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c). All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

Lastly, upon conviction of the offenses set forth in Counts Twenty-Four through Thirty-

Three of the Indictment, in violation of Title 18, United States Code, Section 1343, the

defendants, KONE, OUATTARA, DIAKITE, DIABY, SANGARE, and TRAORE, shall forfeit

to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C)

and Title 28, United States Code, Section 2461(c), any property, real or personal, which

constitutes or is derived from proceeds traceable to the offense.

If any of the aforementioned property, as a result of any act or omission of the

defendants:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to

Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).

All pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

35

A TRUE BILL:

_____
Foreperson


DAVID C. WEISS
UNITED STATES ATTORNEY


By: _____
Briana Knox
Assistant United States Attorney
District of Delaware


_____
Mona Sedky
Senior Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section


_____
Austin M. Berry
Trial Attorney
Child Exploitation & Obscenity Section
U.S. Department of Justice

Dated: August 15, 2024

36

I, _HADJA FANTA KONE_ having
been presented with a copy of the
*SUPERSEDING*  Indictment, upon arraignment, I do
hereby enter a plea of _NOT_ guilty
to the Indictment filed in this case.

Dated this _5th_ day of _SGPT_, 20 _24_

x _Hadjia Kone_
Deft.

_[signature]_
Cnsl.

---

I, _____ having
been presented with a copy of the
Indictment, upon arraignment, I do
hereby enter a plea of _____ guilty
to the Indictment filed in this case.

Dated this ____ day of _____, 20 ___

_____
Deft.

_____
Cnsl.

---

I, _SIDI AHMED DIAKITE_ having
been presented with a copy of the
*SUPERSEDING*  Indictment, upon arraignment, I do
hereby enter a plea of _NOT_ guilty
to the Indictment filed in this case.

Dated this _5th_ day of _SEPT_, 20 _24_

_Said_
Deft.

_Thomas A. Frayes_
Cnsl.

---

*SUPERSEDING* I, _ALMAMY MOUSTAPHA DIAG_ having
been presented with a copy of the
Indictment, upon arraignment, I do
hereby enter a plea of _NOT_ guilty
to the Indictment filed in this case.

Dated this _4th_ day of _SEPT_, 20 _24_

_[signature]_
Deft.

_[signature]_
Cnsl.

---

I, _ABDUL AZIZ SANGARE_ having
been presented with a copy of the
*SUPERSEDING*  Indictment, upon arraignment, I do
hereby enter a plea of _NOT_ guilty
to the Indictment filed in this case.

Dated this _5th_ day of _SEPT_, 20 _24_

_Sangare_
Deft.

_Eleni Kousouli_
Cnsl.

---

I, _ABDOUL AZIZ TRAORE_ having
been presented with a copy of the
*SUPERSEDING*  Indictment, upon arraignment, I do
hereby enter a plea of _NOT_ guilty
to the Indictment filed in this case.

Dated this _5th_ day of _SEPT_, 20 _24_

x _[signature]_
Deft.

_[signature]_
Cnsl.